[No. 21814. Department Two. June 20, 1929.]

BON MARCHE REALTY COMPANY, *Appellant*, v. SOUTHERN SURETY COMPANY, *Respondent*.[1]

*Preston, Thorgrimson & Turner,* for appellant.

*Grinstead, Laube, Laughlin & Lichty,* for respondent.

FRENCH, J.—In December, 1927, appellant's predecessors entered into a contract with one, S. F. Knight, wherein they sold to Knight for a consideration of $6,195 all materials in the buildings located on certain lots in the city of Seattle. In the contract of sale, it was agreed generally to wreck the buildings, and remove all the debris above the sidewalk level. Among other things, the contract provided:

[1]Reported in 278 Pac. 679.

"The contractor agrees to furnish, to the satisfaction of John Graham, architect and engineer, all necessary equipment and labor, and to completely wreck the said buildings, and to remove all materials salvaged therefrom, and all debris resulting from said wrecking, including every portion of said buildings above the level of the adjacent sidewalk, exclusive of first story floors of cement, tile or terrazzo."

It was also provided:

"The contractor and the owner agree that this contract shall not become binding as against the owner, and that possession of the premises for wrecking purposes shall not be given the contractor, until there shall have been filed with John Graham, architect and engineer, a bond in form and amount and with corporate surety satisfactory to said John Graham, the conditions of which said bond shall be that the work required by this contract shall be faithfully performed by the contractor, and that all bills and claims of whatsoever nature arising from the performance of this contract have been fully paid, including damages to the owners as provided in Article VI hereof, if any, and all claims against the owners referred to in paragraph III hereof."

The bond given provides generally:

"Whereas, said principal entered into a certain written contract with the obligees dated December 27, 1927, to furnish all necessary equipment and labor and to completely wreck the several buildings located on lots 5, 9, and 12, of block 52 of A. A. Denny's sixth addition to the city of Seattle, the property of the said Bon Marche, and on lots 8, 2, 3, 6, 7, 10, and 11 in same block and addition, the property of said Frank McDermott; Frank McDermott as trustee for Donald McDermott, Edward J. Nordhoff and Arthur A. Nordhoff, and to remove all materials salvaged therefrom and all debris resulting from said wrecking, including every portion of said buildings above the level of the adjacent sidewalks, which said contract is hereby referred to and made a part hereof.

"Now, therefore, the condition of the foregoing obligation is such: that if the said principal shall well and truly perform the said contract according to the terms thereof and shall well and truly indemnify and save harmless the said obligees from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise, to remain in full force and effect in law."

This contract was thereafter, by consent of all parties, modified by a supplementary agreement, which is not material in this case. At the conclusion of the work, there were unpaid claims on account of the performance of the wrecking contract. While doing the work, the contractor became financially involved, and appellant agreed to advance certain moneys to assist the contractor in completing his contract, and the bonding company agreed to pay a certain portion of this sum. With the consent of the contractor, the appellant took possession of the material salvaged, and was to apply the proceeds of the sale thereof in payment of these claims. The contractor, generally speaking, completed the contract, and a small sum of money was remaining in the hands of appellant. After the work had been completed, it developed that there were outstanding claims against the contractor, for services performed in connection with the wrecking contract, aggregating approximately seventeen hundred dollars. The bonding company was notified of these outstanding claims, which were, generally speaking, claims for gas and oil used for trucks on the job in connection with the performance of the wrecking contract, services of gas shovel, together with operator and labor used in clearing off the premises, the furnishing of an air compressor used for breaking up concrete, all being general claims for labor and material used wholly in

connection with the wrecking of the buildings. Thereafter, appellant notified the surety company of the claims still outstanding, and the surety company offered to defend against them. No liens were filed, but appellant paid these claims, and the lower court held that the bonding company was not liable for these claims, and this appeal follows.

We have heretofore, and shall hereafter, refer to appellant in this action as if the appellant had been the original party to the contract, as the claims of its predecessors in interest were duly assigned for the purpose of this suit, and this designation has been used by both parties in their respective briefs.

It is appellant's contention, first, that the bond is a performance bond, and that the cause of action for the full amount of the unpaid claims arose on Knight's failure to pay them, and second, that the unpaid claims were lienable, and that their payment by the Bon Marche was within the conditions of the bond.

We will first consider whether or not the claims were lienable. It must be remembered that this contract, entered into between Knight and appellant, had to do only with the wrecking of the existing buildings, and the materials furnished and labor performed had nothing to do with the alteration, construction or repair of any building, but had to do only with the tearing down of already existing structures. We held in *Sound Transfer Co. v. Phinney Realty & Investment Co.*, 71 Wash. 473, 128 Pac. 1047, that the furnishing of labor and materials in the wrecking of a building is not lienable under our general lien statute as comprised in Rem. Comp. Stat. § 1129. We also think that a casual reading of Rem. Comp. Stat., § 1131, will show that the work performed could in no event bring it within the provisions of that section. The section reads as follows:

"Any person who, at the request of the owner of any real property, his agent, contractor or subcontractor, clears, grades, fills in or otherwise improves the same, or any street or road in front of, or adjoining the same, has a lien upon such real property for the labor performed, or the materials furnished for such purposes."

The contractor was not "clearing, grading or filling in" the property, as these acts can only be performed on land not actually occupied by buildings. Neither does he come under the head "otherwise improve," because the contractor in this case was paying for the privilege of removing these structures. The salvage value of the material removed was some $6,000. Contrary to the usual conditions existing, the contractor was paying for the privilege of salvaging this material, not being paid to remove certain obstructions. To permit this contractor to claim a lien under the provisions of § 1131, *supra*, would permit a contractor to purchase sand in place from the owner of a sand bank, and then claim a lien for removing the same. We still adhere to the doctrine announced in *Sound Transfer Co. v. Phinney Realty & Investment Co., supra*, and hold that, whatever may be the rule in other jurisdictions, our statute gives no right of lien for demolition.

■ Coming now to the question of the character of the bond furnished, the trial court held that it was an indemnity bond given to protect appellant only against legal liability. The condition of the bond has been quoted above, and it will be noticed that the terms of the bond provide that "if the said principal shall well and truly perform the said contract according to the terms thereof, etc.," and also that the contract provides that the contractor agrees to furnish a bond,

" . . . the conditions of which said bond shall be that the work required by this contract shall be faithfully performed by the contractor and that all

bills and claims of whatsoever nature arising from the performance of this contract have been fully paid".

We have heretofore had before us bonds and contracts containing like provisions. Concerning them, we have said:

"But let us see what effect that provision of the bond which makes the contract a part of it has. Will the mere fact that the contract provides for a statutory bond make it conclusive that any bond given was intended to be a statutory bond? We think not. The mere fact that the contract was made a part of the bond cannot help the situation; the result would be the same if it were not made a part of it, for we must assume that the surety must have been acquainted with its terms. To hold otherwise would be to hold that a bond is a statutory one simply because the statute provides for a bond of that nature, and that every bond of this nature is a statutory one, regardless of its terms. *The surety had a right to give such bond as it pleased and to limit its liability in any manner it saw fit.*" (Italics ours.) *Wallace Equipment Co. v. Graves,* 132 Wash. 141, 231 Pac. 458.

We think it is apparent, upon reading this contract and bond given pursuant thereto, that the parties had in contemplation only the fact that the work would be completed within the cost set in the contract, and that the owner should receive his money free from any legal liability.

We think the case comes squarely within the holding in *Rust v. United States Fid. & Guar. Co.,* 87 Wash. 93, 151 Pac. 248, where the bond was conditioned in almost the identical language of this bond, and where this court said:

"While the contract did not expressly provide that the contractors should pay all bills incurred in the prosecution of the work, we have held that an agreement to furnish materials includes an agreement to pay for them (citing cases). But it does not follow that re-

spondent can maintain an action on this promise. Not having been damaged, he could not sue for his own benefit.''

So it is in this case. Appellant was under no legal liability to pay these disputed claims. No liens were ever filed, and respondent offered to defend against any asserted claims, but appellant voluntarily paid them. Possibly appellant could have taken a bond under which it could recover such payments, but the limit of liability of the bonding company is fixed by the terms of its obligation.

True, appellant may have believed that it was good business on its part to pay these obligations, but there is nothing in either the bond or contract to even remotely suggest that the good will or good name of the Bon Marche were to be in any way protected, nor even to suggest that they were in any way involved. The claims being neither lienable nor enforcible against appellant, there was no liability thereon.

It is conceded, however, that appellant should have been allowed an additional amount in the sum of $186.09. Appellant concedes that, due to oversight of counsel, the attention of the trial court was not properly directed to this item; and respondent concedes that the judgment must be so modified.

Under the peculiar circumstances of this case, however, we feel that this should be done without costs to either party.

As thus modified, the judgment will be affirmed.

PARKER, MAIN, BEALS, and MILLARD, JJ., concur.