BIG THREE WELDING EQUIPMENT COMPANY, INCORPORATED, v. CRUTCHER, ROLFS, CUMMINGS, INCORPORATED, ET AL.

No. A-2499. Decided May 3, 1950.
Rehearing overruled May 31, 1950.
(229 S. W., 2d Series, 600.)

*Harry W. Freeman,* of Houston, for petitioner, Big Three Welding and Equipment Company.

It was error for the Court of Civil Appeals to hold that the respondents herein are entitled to a lien on the theory that the installation of such removed pipe line in other parts of the pipe line system constitutes operation and maintenance of the parallel pipe line which remained in operation, since it has been held by the Court that Article 5473 "is not broad enough to include dismantling or destruction of a pipe line" and that the contract herein involved does not provide for the installation of the pipe in a new place. Hall v. Davis, 18 S. W. 2d 1063; Focke v. Blum,

82 Texas 436, 17 S. W. 770; Holloway Seed Co. v. City National Bank of Dallas, 82 Texas 187, 17 S. W. 777; United States v. Yates, 204 S. W. 2d 399.

*Andrews, Kurth, Campbell & Bradley,* and *Homer Mabry,* of Houston, for respondent, Crutcher, Rolfs, Cummings, Incorporated, and *Bates, Cartwright & Bates,* and *Reagan Cartwright,* also of Houston, for respondent, Kane Trucking Company.

In answering proposition of petitioner, cited Gourley v. Iverson Tool Company, 186 S. W. 2d 726; McCutchen v. City of Siloam Springs, 185 Ark. 846, 49 S. W. 2d 1037; Missouri, K. & T. Ry. Co. v. Bryan, 107 S. W. 572.

*Nelson Jones, Frank L. Heard, Jr.,* and *Moody Pearson,* all of Houston, for respondent Humble Pipe Line Company.

The Humble Pipe Line Company, as garnishee had a right to implead all claimants to the garnished fund and deposit same in the registry of the court in order to have conflicting claims adjusted and determined so that it might be protected from further litigation or risk of being required to make double payment of the debt upon which this garnishment is based. State v. Mauritz-Wells Co., 141 Texas 634, 175 S. W. 2d 238; Texas Rules of Civil Procedure 43; 20 Texas Jur., 869, par. 127.

*Brian S. Odem,* United States Attorney, and *William R. Eckhardt,* Assistant United States Attorney, of Houston, for intervenor, United States.

As an employer of labor, the Ladewig Engineering Company, original defendant in this suit, is liable to the United States for payment of withholding taxes by virtue of Section 1623, Title 26, United States Code, and is liable for taxes due under the Federal Insurance Contributions Act by virtue of Section 1600, Title 26, U. S. Code, and having duly perfected its tax lien against the debt due Ladewig Engineering Company by the Humble Pipe Line Company under their contract for labor, work and materials furnished, which is a property right to which the lien provided in Section 3670, Title 26, U. S. Code will attach, the United States is entitled to priority of its claim for said taxes against the funds impounded in the registry of the Court. Glass City Bank v. United States, 326 U. S. 265; Oil Field Salvage Co. v. Simon, 140 Texas 456, 168 S. W. 2d 848; United States v. Emory, 314 U. S. 423.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The controversies herein are as to priorities of liens and consequently as to priorities of payment out of a fund deposited with the clerk of the district court by Humble Pipe Line Company as stakeholder. On trial without a jury the district court adjudged that the petitioner, Big Three Welding Equipment Company, Inc., which perfected a garnishment lien, is entitled to priority over all other parties to the suit; that the United States of America, having perfected a lien for taxes, is entitled to priority of payment over all other parties except Big Three Welding Equipment Company, Inc.; and that the other parties have no liens and no priorities in the fund and are entitled to share pro rata in the balance after payment to Big Three Welding Equipment Company, Inc., and the United States of America of the amounts adjudged to them.

On appeal by Crutcher, Rolfs, Cummings, Inc., Kane Trucking Company and the United States of America, the Court of Civil Appeals reversed the trial court's judgment and remanded the cause, after holding that priorities of payment exist and payment shall be made in this order: First to United States of America the full amount of its debt; second, to Crutcher, Rolfs, Cummings, Inc., and Kane Trucking Company their debts, they to share pro rata in the sum remaining after payment to the United States; third, to Big Three Welding Equipment Company, Inc., the full amount of its debt out of what remains, if anything; and finally to the unsecured creditors the payment of their claims pro rata out of any balance remaining. 224 S. W. 2d 884.

The case began as an action for debt by Big Three Welding Equipment Company, Inc., against Ladewig Engineering Company; and writ of garnishment was issued and served on Humble Pipe Line Company, which answered that it was indebted to Ladewig Engineering Company for work done and services rendered as an independent contractor in the sum of $21,880.39. Under order of the district court, this sum was paid to the clerk of the court to be held until the determination of the rightful owners thereof, and claimants of liens and other creditors of Ladewig Engineering Company were impleaded. The United States of America became a party by intervention, asserting a prior right of payment by reason of unpaid taxes owed to it by Ladewig Engineering Company. Crutcher, Rolfs, Cummings, Inc., and Kane Trucking Company are claiming prior liens and prior rights of payment under Article 5473 and 5474 of the Revised Civil Statutes of 1925 as amended by Chapter 223, Acts Regular Session, 41st Legislature. The lien claimed by the first

of these two companies is for selling and delivering to Ladewig Engineering Company equipment, materials and supplies used by that company in the performance of its contract with Humble Pipe Line Company for "digging, removing, dismantling, operating, maintaining or repairing a pipe line or pipe lines" owned by the Humble Pipe Line Company; and the lien claimed by the second of these two comapnies is for trucking and hauling services performed for Ladewig Engineering Company under its contract with the Humble Pipe Line Company.

The principal question to be decided is whether the statute, Articles 5473 and 5474, gives to Crutcher, Rolfs, Cummings, Inc., and Kane Trucking Company rights to liens for the equipment, materials and supplies furnished by them and the trucking and hauling services rendered by them in the performance of Ladewig Engineering Company's contract with Humble Pipe Line Company. If these two companies are entitled to liens under the statute, they have taken the steps required to perfect their liens. It is necessary to look to the provisions of the statute, to the terms of the contract beween Ladewig Engineering Company and Humble Pipe Line Company and to the facts in evidence as to what was contemplated to be done and what was done in the performance of that contract.

Article 5473, omitting words and phrases not relevant here, is as follows:

"Any person, corporation, firm, association, partnership, artisan, materialman, laborer or mechanic, who shall, under contract, express or implied, with the owner * * * of any gas pipe line or oil pipe line, or the owner of any oil or gas pipe line right-of-way, or with the trustee, agent or receiver of any such owner, perform labor, furnish or haul material, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such * * * oil or gas pipe line, shall have a lien on the whole of such * * * oil pipe line, or gas pipe line, including the right-of-way for same, * * * and upon the materials and supplies so furnished or hauled, and upon said * * * oil or gas pipe line, * * * * * * * for which said material and supplies were furnished or hauled or labor performed."

Article 5474 is as follows:

"Any person, corporation, firm, association, partnership or materialman who shall furnish or haul such machinery, material or supplies to a contractor or subcontractor, or any person who

shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor or subcontractor shall perform any such labor, shall have a lien upon all such property or interest described in the preceding article, including right-of-way, for which said material and supplies were furnished or hauled and labor performed, in the same manner and to the same extent as the original contractor, for the amount due him for material furnished, or for such hauling or labor performed."

It thus appears that those who furnish or haul machinery, materials or supplies, or perform labor, for a contractor are given the right to fix liens only in the event the contractor, had he himself furnished or hauled the machinery, etc., or performed the labor, would have been entitled to a lien under Article 5473.

The substance of the material portions of the contract between Humble Pipe Line Company, owner, and Ladewig Engineering Company, contractor, is as follows: The contractor agrees, with the necessary crews, tools, machinery and equipment furnished by it, to "dismantle, haul, recondition, rack and load aboard cars" 50 miles of 8 inch pipe located between the owner's Arp station and Groesbeck station, and the pipe dismantled to be hauled by the contractor to reconditioning yards, approximately 15.55 miles at Fry's Gap, 19.35 miles at Palestine, 8.68 miles at Long Lake, and 6.67 miles at Mexia, Texas. The contract sets out in some detail the method for reconditioning the pipe, the amounts to be paid, by length of pipe, for dismantling and hauling and for work at the reconditioning yards, and the amounts to be paid for labor and equipment. The contract contains, among others, the usual provisions for protection of the owner against claims and demands in favor of the contractor's employees or third parties, agreement that the contractor shall pay all claims for labor and material and permit no liens to be fixed, and agreement that the owner may withhold payments in accordance with the provisions of Article 5469 of the statutes. Specifications, entitled "Specifications for Dismantling" and made a part of the contract, prescribe the method for removing the pipe from the ground and dismantling it, for picking it up and hauling it to reconditioning and storage yards, for reconditioning and racking the pipe, and for storage and the loading of a portion of the pipe aboard cars from the various storage yards. One of the final provisions of the specifications is that the contractor will be expected to complete within ninety days "the dismantling, cleaning, reconditioning, racking and loading of all pipe specified".

The following is the substance of the uncontradicted testimony of R. A. Brannon, administrative assistant in the office of the superintendent of the Humble Pipe Line Company, who was called as a witness by Crutcher, Rolfs, Cummings, Inc.: The pipe line system of the Humble Company consists of parallel individual lines. The line described in the contract between Ladewig Engineering Company and the Humble Company was a continuous line with intermediate stations, an 8 inch line alongside another pipe line and "hooked up" with other lines at a gate plant, part of a system of gates for inter-connecting lines. All of the lines were part of the same system, all operated as a single system. Each of the 8 inch pipe lines described in the contract was parallel with other pipe lines, all being a part of the pipe line system that was used between the Humble Company's Arp station and its Groesbeck station. When the portion of the line was taken up under the contract the other lines parallel to it were left and continued in operation. The portion of the line was taken up because the amount of oil to be transported could be handled through the remaining lines. The pipe lines were taken up because the Humble Company had no further need for them. The facilities remaining, that is, the remaining parallel lines, were adequate for transporting the oil to be pumped between the stations referred to in the contract. Before the removal of the pipe lines under the contract the company had a double pipe line, or three lines, and after the removal it had generally a single line and in some places two lines. The pipe taken up was uncovered by removing the earth above it and then was lifted out of the ditch. It was hauled away and "was not placed again in this right-of-way". It was not used anywhere in the right-of-way within the three counties from which it was removed. It was shipped to other points and installed, but was neither shipped nor installed under the contract with Ladewig Engineering Company.

■ The contention of the two companies claiming liens under Article 5473, sustained by the Court of Civil Appeals, is that the work of dismantling and removing the pipe line or part of the pipe line, in the performance of which they furnished and hauled materials, machinery and supplies, was work done in "operating" and "maintaining" the pipe line of the Humble Pipe Line Company within the meaning of Article 5473. We cannot sustain this contention.

The ordinary, usual meaning of the word "operate" is "To put into, or to continue in, operation or activity; to manage; to conduct; to carry out or through; to work; as to operate a machine or motor vehicle." Webster's New International Distion-

ary; Brace v. Rashaw, 114 Vt. 366, 45 Atl. 2d 207, 208, 46 C. J., pp. 110-1111; 29 Words and Phrases, pp. 537-541. "Maintain" is thus defined: "To keep up, preserve, bear the cost of, keep unimpaired, keep in good order, repair." Black's Law Dictionary, (3d Ed.). p. 1143. The New International Dictionary's definition of maintain is "To hold or keep in any particular state or condition, especially in a state of efficiency or validity; to support, sustain or uphold; to keep up; not to suffer to fail or decline." See also 26 Words and Phrases, pp. 57-69.

The work of dismantling the pipe line or part of it and of removing it from the earth, the hauling of the pipe thus removed to storage yards, placing it on racks, reconditioning it and loading some of it aboard cars was neither operation nor maintenance. The process did not put this part of the pipe line into operation or activity or continue it in operation or activity; it rather took it out of operation and activity. The process was not to keep up or preserve this part of the pipe line; it was rather to dismantle or demolish it.

■ The giving of liens to those who furnish materials and labor for works of improvement or construction, with the according of priorities to those liens, is "based upon the very just consideration that a person who by his labor or material expended or improvements made on the land of another, under contract, express or implied, that this shall be paid for, thereby increases its value, and ought to the extent of the contract price or value of the thing furnished, to have a lien on the land, of which the improvement becomes a part, to secure payment." Lippencott v. York, 86 Texas 276, 280, 24 S. W. 275. See also Hess v. Denman Lumber Co., 218 S. W. 162, 164, application refused; 36 Am. Jur. p. 20, Sec. 4. In accord with this principle, the prevailing view is that mechanics' lien statutes confer no right to assert a lien for performing labor or furnishing materials in the removal or demolition of structures or improvements, unless they expressly so provide. Bon Marche Realty Co. v. Southern Surety Co., 152 Wash. 604, 278 Pac. 679, 63 A. L. R. 1246; Note 63 A. L. R. pp. 1250-1257; 36 Am. Jur. p. 53, Sec. 63.

Article 5473 does not expressly provide for a lien in favor of those who perform labor or furnish materials in the dismantling or removal of a pipe line or part of a pipe line. It gives the right to assert a lien for labor performed or material furnished in operating, completing, maintaining or repairing.

A different question would have been presented if the con-

tract between Humble Pipe Line Company and Ladewig Engineering Company had imposed upon the contractor, as a part of the contract for dismantling and removing part of the pipe line, the additional duty to transport the pipe so removed to another part of the Humble Company's pipe line system and there to install it for the improvement of that part of the system. See Arthur Morgan Trucking Co. v Shartzer, 237 Mo. App. 535, 174 S. W. 2d 226. But that additional work by the contractor was neither contemplated by the contract nor was it performed by the contractor or by those employed by the contractor. Ladewig Engineering Company's obligation was, or would be, performed and its work completed when it removed the pipe line, or the part of the pipe line, from the ground, hauled the pipe to the reconditioning yards, placed it on the racks, reconditioned it and loaded some of it on the cars. The record shows that at some time not disclosed and at some place not disclosed, except that it was not in the right-of-way from which the pipe was removed and not even in the same counties, the pipe was installed in the Humble Pipe Line Company's system, but the record further shows that the pipe was neither shipped nor installed under the contract with Ladewig Engineering Company.

The argument is made by Crutcher, Rolfs, Cummings, Inc., and Kane Trucking Company that the removal of part of the pipe line and the placing of the pipe in other portions of the pipe line system constituted operation and maintenance, in that the pipe line was thereby made more efficient at the place, or places, from which the surplus pipe was removed and the pipe line system made more efficient when the pipe was installed at other places. The argument finds no support in the facts in evidence. There is no evidence that the part or parts of the line were removed in order to make the remaining lines more efficient. There is no evidence whatever tending to prove that the parallel line or lines remaining were more efficient after the removal of one of the lines. They continued to be operated for the transportation of the oil and they were sufficient for that purpose. The evidence is that the portion, or portions, of the line were removed because they were no longer needed. As far as the volume of the oil that could be transported was concerned, the line or lines remaining were less efficient than were the two or three parallel lines before the removal of one of them. If in the absence of evidence it is to be assumed that the pipe line system as a whole was made more efficient or was better maintained by installing the removed and conditioned pipe at other places, the fact remains, mentioned above, that neither Ladewig Engineering Company nor those who performed labor and fur-

nished materials and equipment for it had any part in that installation.

Since the fund in the custody of the court is more than sufficient to pay both the amount adjudged to Big Three Welding Equipment Company, Inc., and that adjudged to the United States of America, it is unnecessary to determine the question of priority as between them, and the part of the judgment of the district court which gives priority to Big Three Welding Equipment Company, Inc., over the United States may be disregarded as immaterial.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion delivered May 3, 1950.

MR. JUSTICE HART, dissenting.

I respectfully dissent from the holding that Article 5473 does not authorize the respondent, Crutcher, Rolfs, Cummings, Inc., and Kane Trucking Company, to fix liens to secure the payment to them of the sums owing for the performance of their subcontracts with Ladewig Engineering Company. In my opinion, the services required of Ladewig Engineering Company in its contract with Humble Pipe Line Company constitute the performance of labor and the furnishing and hauling of materials, machinery and supplies in "operating" and "maintaining" the pipe line, as those terms are used in the statute.

It should not be controlling that the pipe was not used again in the same places from which it was removed, or even in the same counties, or that the respondents did not themselves install the pipe in its new location. The particular part of the pipe line from which the pipe was taken should not be considered as isolated from the rest of the system, nor should what the respondents did be considered apart from its relation to the whole process of the conduct of the pipe line. It seems to me that it is sufficient to bring the respondents under the statute that they performed services and furnished materials for a part of the continuing operation and maintenance of the pipe line, considered as a whole. In other words, taking pipe out of the ground, reconditioning it, and putting it back in another place seem to me to be parts of the operation and maintenance of a pipe line, and since what respondents did constitutes a part of that process, they should have the benefit of the statute.

Opinion delivered May 3, 1950.

Rehearing overruled May 31, 1950.