ORIX CAPITAL MARKETS, L.L.C. and Orix USA Corporation, Appellants,

v.

WASHINGTON MUTUAL BANK, f/k/a Washington Mutual Bank, F.A., Appellee.

No. 05–07–00860–CV.

Court of Appeals of Texas, Dallas.

July 21, 2008.

Rehearing Overruled Aug. 27, 2008.

---

Gregory D. May, Amy N. Howell, Dallas, TX, for Appellant.

Cheryl E. Diaz, Debora McWilliams Alsup, Thompson & Knight, L.L.P., Austin, TX, for Appellee.

Before Justices WHITTINGTON, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice WHITTINGTON.

In this breach of contract case, each party moved for summary judgment. The trial judge granted the motion of appellee Washington Mutual Bank, f/k/a Washington Mutual Bank, F.A., and denied the motion of appellants Orix Capital Markets, L.L.C. and Orix USA Corporation (Orix). In two issues, Orix contends the trial judge erred in denying its motion for summary judgment and granting Washington Mutual's motion. Because Orix established there is no genuine issue of material fact and it is entitled to judgment as a matter of law on its claims, we reverse the trial court's judgment.

### Background

On June 28, 2004, the parties entered into an agreement under which Orix would maintain money market deposit accounts at Washington Mutual, and Washington Mutual would pay a monthly incentive fee based on the balances in the accounts. Under their agreement, "the Bank will pay to ORIX a fee based on the average daily ... [b]alances ... for the preceding month maintained by ORIX at the Bank." The parties amended their agreement on June 8, 2005, and continued to operate under it without issue until December, 2005. The only dispute between the parties arises out of the fee Orix contends is due for a portion of December, 2005. Washington Mutual contends it has no contractual duty to pay the disputed fees because on December 8, 2005, Orix sold the deposit balances to a third party. After Washington Mutual refused to pay the disputed fees, Orix sued for breach of contract. Each party moved for summary judgment. After hearing, the trial judge entered judgment for Washington Mutual, ruling that Orix should take nothing on its claims.

### Standard of Review

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one party's motion for summary judgment and denies the other party's motion, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

### Discussion

■ The interpretation of an unambiguous contract is a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex. 1999). When interpreting written contracts, our primary concern is to determine the mutual intent of the parties as manifested in the contract itself. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

The parties' intent must be taken from the agreement itself and the agreement must be enforced as written. *Wells Fargo Bank, Minnesota, N.A. v. North Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.-Dallas 2006, pet. denied). A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker*, 650 S.W.2d at 394. No single provision taken alone will be given controlling effect. *Coker*, 650 S.W.2d at 393. All provisions of a contract must be considered with reference to the entire instrument. *Coker*, 650 S.W.2d at 393. We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

The dispute between the parties is centered on a single phrase of their agreement, "maintained by Orix." Washington Mutual contends that a third party, Key-Corp. Real Estate Capital Markets, Inc., maintained the balances after December 8, 2005, while Orix contends it continued to maintain the balances during the relevant period. Orix focuses on the meaning of "maintained," while Washington Mutual focuses on the meaning of "by Orix."

Washington Mutual moved for summary judgment on the ground that the undisputed evidence showed it did not breach the deposit agreement, so Orix could not prove an essential element of its claim. It argued the evidence conclusively showed Orix did not "maintain" the deposit balances after it sold its servicing business to KeyCorp., so Washington Mutual did not breach the agreement by failing to pay the disputed fee. Orix's cross-motion for summary judgment alleged Washington Mutual breached the contract as a matter of law.

A successful breach of contract claim requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex.App.-Dallas 2008, no pet.). A breach of contract occurs when a party fails or refuses to perform an act that it expressly promised to do. *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex.App.-Dallas 1991, writ denied). Whether a party has breached a contract is a question of law for the judge, not a question of fact for the jury. *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 253 n. 3 (Tex.App.-Dallas 1990, no writ). The judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury. *ITT Commercial Fin. Corp.*, 796 S.W.2d at 253 n. 3. Where the evidence is undisputed regarding a party's conduct under a contract, the judge alone must determine whether it shows performance or breach of its contract obligation. *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex.App.-Austin 1998, pet. denied).

The issues before us are whether Orix performed the contract after December 8, 2005 by maintaining the balances in the accounts, and whether Washington Mutual breached the contract when it failed to pay the contractual fee on the balances in the accounts after December 8, 2005. Certain facts are undisputed. The parties agree Washington Mutual agreed to pay Orix a monthly fee based on balances maintained by Orix in the bank. Orix admits, "[O]n November 14, 2005, ORIX and KeyCorp executed an Asset Purchase Agreement for ORIX's commercial mortgage master

servicing business." The Orix/Washington Mutual agreement required Washington Mutual's written consent to assignment. Orix did not obtain Washington Mutual's consent to an assignment, and the contract was not assigned to KeyCorp. After December 8, 2005, Orix provided transition services to KeyCorp. on a contractual basis. The accounts in question remained at Washington Mutual during the relevant time period. The balances in the accounts for the relevant time period and the fee that would be due assuming the contractual formula was applied are not disputed. Washington Mutual did not pay the contractual fee for the balances in the accounts after December 8, 2005.

The only dispute between the parties is the effect of the sale to KeyCorp. on the parties' obligations under their agreement. Washington Mutual contends Orix transferred ownership and control of the accounts and deposits to KeyCorp., and so did not "maintain" the balances after December 8, 2005. Orix contends that as between it and Washington Mutual, Orix continued to own and control the accounts during the relevant time period, and, in any event, ownership and control is not required in order to "maintain" the accounts under the contract.

Washington Mutual argues the phrase "maintained by Orix" means that only Orix could have "ownership and control" of the funds in the accounts. Washington Mutual further argues we must look to the terms of the agreements between KeyCorp. and Orix, which show KeyCorp. had ownership and control of the funds, not Orix. Orix contends it never had "ownership and control" of the accounts either before or after the sale to KeyCorp., because, as clearly understood by both parties at the outset, Orix always held the funds as custodian for others. As set forth in Washington Mutual's own summary judgment motion, "[t]he

vast majority of the deposit accounts were custodial accounts that Orix serviced as part of its commercial mortgage backed securities business."

We agree with Orix that it continued to "maintain" the balances in the accounts as required by the contract between the parties. The term "maintain" is not defined in the parties' agreement. Therefore, we give the term its plain, ordinary, and generally accepted meaning. *See Heritage Res., Inc.,* 939 S.W.2d at 121. Orix offers definitions used by two supreme courts. In *Owasso Independent School District. No. I–011 v. Falvo,* 534 U.S. 426, 122 S.Ct. 934, 151 L.Ed.2d 896 (2002), the Court stated, "[t]he ordinary meaning of the word 'maintain' is 'to keep in existence or continuance; preserve; retain.'" 534 U.S. at 433, 122 S.Ct. 934 (citing RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1160 (2d ed.1987)). In *Big Three Welding Equipment Co. v. Crutcher, Rolfs, Cummings, Inc.,* 149 Tex. 204, 229 S.W.2d 600 (1950), the court stated, " '[m]aintain' is thus defined: 'To keep up, preserve, bear the cost of, keep unimpaired, keep in good order, repair' ... [or] 'To hold or keep in any particular state or condition especially in a state of efficiency or validity; to support, sustain or uphold; to keep up; not to suffer to fail or decline.'" 229 S.W.2d at 603 (citing BLACK'S LAW DICTIONARY, 3d Ed. at 1143, THE NEW INTERNATIONAL DICTIONARY, and 26 WORDS AND PHRASES, Perm. Ed. at 57–69). Washington Mutual does not dispute these definitions, but argues, "under any of these definitions, ORIX ceased 'maintaining' the accounts and balances on December 8, 2005, when ORIX sold them to KeyCorp."

Orix offered summary judgment evidence that as between Orix and Washington Mutual, the parties to the contract at issue, nothing changed in the relevant time period. Both before and after December

8, 2005, Orix was the accountholder, and employees of Orix were the only authorized signatories on the accounts. The bank's own account regulations, incorporated by reference into the contract, protected it from claims of ownership by parties other than the accountholder. The bank was not required to inquire into the source or ownership of the funds received for deposit in an account. Further, Washington Mutual was aware that when a servicing company such as Orix deposited funds in Washington Mutual accounts, those funds were typically owned by another entity or person. In addition, in the parties' agreement, drafted by Washington Mutual, there is no requirement that Orix "own" or "control" the funds in the accounts; the requirement is that Orix "maintain" the balances. There is no dispute Orix deposited over $490 million in the Washington Mutual accounts in the month of December, 2005. While Key-Corp. may have owned the funds in the accounts after December 8, the funds remained in the Washington Mutual accounts.

Washington Mutual contends that upon the sale to KeyCorp., Orix lost the ability to determine where its deposits would be kept over the long term, so that Washington Mutual's "entire purpose and incentive in entering into the Fee Agreement with ORIX disappeared—ORIX could not longer direct the money, or control where, or for how long, that money could be maintained on deposit." This purpose and incentive, however, was not memorialized in the language of the parties' agreement. There is no requirement that Orix "direct" or "control" the funds, or that it do so for any particular period of time. Washington Mutual did agree to offer the contractual fee rate for a period of three years ("The above indicated Fee Rates and Interest Rates offered will remain committed by Bank to ORIX for a three-year term commencing with the Effective Date, unless terminated by either party in accordance with Section 7."). The agreement, however, also allows either party to terminate with three months' notice ("7. Termination. The terms of the arrangement contemplated by this letter shall remain in effect unless and until terminated by either party, with or without cause, upon not less than three months' advance written notice to the other."). As recognized by Washington Mutual, the parties' intent must be taken from the agreement itself, not from the parties' subsequent interpretation, and the agreement must be enforced as it is written. *See Nicol v. Gonzales,* 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). The contract required Orix to "maintain" the funds at the bank. Washington Mutual does not dispute the funds remained in the accounts during the relevant time period, and does not allege there was any change in its use or treatment of the funds during that period. The agreed definitions of "maintain," that is, to "keep in existence," to "preserve," or to "retain," *see Owasso,* 534 U.S. at 433, 122 S.Ct. 934, and *Big Three Welding,* 229 S.W.2d at 603, were met when Orix kept the funds in the accounts and continued to make deposits into the accounts as it had throughout the term of the parties' agreement, and did not close the accounts or withdraw the funds for deposit elsewhere.

Because Orix maintained the balances as provided for in the parties' contract, Orix established as a matter of law it performed the contract. Therefore, Washington Mutual breached the contract by failing to pay the contractual fee for the month of December, 2005. Summary judgment in Orix's favor is proper. We sustain Orix's two issues, and hold the trial judge erred in granting Washington Mutual's motion for summary judgment and denying Orix's motion. We reverse the trial court's judg-

ment, render judgment for Orix on its breach of contract claim, and remand to the trial court for consideration of attorneys' fees and interest. *See* TEX.R.APP. P. 43.2(c) and (d) (court of appeals may reverse the trial court's judgment and render judgment in whole or in part, or may reverse the trial court's judgment and remand the cause for further proceedings).