# NO. 12-18-00138-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MURPHY LAND GROUP, LLC,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ATMOS ENERGY CORPORATION,*<br>*APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Murphy Land Group, LLC appeals the trial court's order granting summary judgment in favor of Atmos Energy Corporation. Murphy Land raises two issues on appeal. We affirm.

### BACKGROUND

Murphy Land owns forty-eight acres of land in Houston County, Texas. The property is burdened by three pipeline easements.[1] In pertinent part, these express easements grant Lone Star Gas Company and its successors and assigns the "right of way and easement to construct, maintain, and operate pipe lines and appurtenances thereto" along with "ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining, and replacing the property of [Lone Star and its successors] . . . ." Lone Star constructed three pipelines on the property pursuant to the easements: Line SU in 1953 at Navarro Crossing; Line L8AEA in 1955; and Line CT-990 in 1964 (collectively, the "pipelines"). Atmos Energy is the successor-in-interest to Lone Star Gas Company's rights under the easements. Lone Star and its successor Atmos Energy have continuously operated the pipelines since their inception.

---

[1] The easements are recorded in the Official Public Records of Houston County, Texas, respectively at Volume 300, Page 284; Volume 425, Page 553; and Volume 414, Page 670.

On May 2, 2012, Murphy Land and Atmos Energy executed a "Roadway Lease." The Roadway Lease granted to Atmos Energy "the right of way and easement to construct and maintain a roadway forty feet (40') in width, on a route to be selected by [Atmos Energy], together with the right in said [Atmos Energy] to free and uninterrupted use, liberty, privilege and easement in, on and over said roadway to extend on, over, through and across [Murphy Land's 48 acre tract]." The Roadway Lease expired under its own terms on May 1, 2015.

Murphy Land believed that the pipeline easements merged into the Roadway Lease when the parties executed the lease on May 2, 2012, and therefore those easements ceased to exist as independent interests in the land. Consequently, according to Murphy Land, once the Roadway Lease expired on May 1, 2015, any entry on the land by Atmos Energy was unlawful. Moreover, on March 21, 2016, Atmos Energy commenced a temporary "pigging" operation, which is a form of pipeline maintenance, and Atmos Energy utilized a "gas flaring" technique as part of its pigging operation on the property. Murphy Land believed that this procedure was unauthorized.

Accordingly, Murphy Land filed a declaratory judgment suit alleging that Atmos Energy had no right to access Murphy Land's property. Murphy Land sought to recover damages for Atmos Energy's unlawful trespass and use of the property, injunctive relief enjoining Atmos Energy's entry thereon and any gas flaring maintenance pigging procedures, along with attorney's fees. Atmos Energy filed a traditional and no-evidence motion for summary judgment. The trial court granted the motion, ordered that Murphy Land take nothing against Atmos Energy, and dismissed its claims. This appeal followed.

### SUMMARY JUDGMENT – MERGER DOCTRINE

In its first issue, Murphy Land argues that the three pipeline easements ceased to exist when the parties executed the Roadway Lease under the "merger doctrine," and that Atmos Energy's entrance onto the property after the Roadway Lease expired constituted trespass.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Rule 166a provides a method of summarily terminating a case when it clearly appears that only

2

a question of law is involved and that there is no genuine fact issue. ***Rhone-Poulenc, Inc. v. Steel***, 997 S.W.2d 217, 222 (Tex. 1999). A defendant-movant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. ***Frost Nat'l Bank v. Fernandez***, 315 S.W.3d 494, 508 (Tex. 2010).

A no-evidence motion for summary judgment must show that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); ***Timpte Indus., Inc. v. Gish***, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); ***Mack Trucks, Inc. v. Tamez***, 206 S.W.3d 572, 582 (Tex. 2006).

A fact issue exists, precluding summary judgment, if there is more than a scintilla of probative evidence to support each element of the plaintiff's claim. ***Neely v. Wilson***, 418 S.W.3d 52, 59 (Tex. 2013). Evidence is more than a scintilla if it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. ***Serv. Corp. Int'l v. Guerra***, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is less than a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. ***Regal Fin. Co. v. Tex Star Motors, Inc.***, 355 S.W.3d 595, 603 (Tex. 2010).

We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. ***Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding***, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. ***20801, Inc. v. Parker***, 249 S.W.3d 392, 399 (Tex. 2008).

**Applicable Law**

We apply contract construction principles when interpreting and considering an express easement's terms. ***Marcus Cable Assocs., L.P. v. Krohn***, 90 S.W.3d 697, 700 (Tex. 2002). These same principles apply to our interpretation of written lease agreements. *See **NP Anderson Cotton Exch., L.P. v. Potter***, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.). The interpretation of an unambiguous contract is a question of law. ***URI, Inc. v. Kleberg Cty.***, 543 S.W.3d 755, 763 (Tex. 2018). In construing a contract, we consider the intent of the parties as expressed in the written agreement. ***Valence Operating Co. v. Dorsett***, 164 S.W.3d 656, 662 (Tex.

3

2005). Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Our role is to determine the intent of the parties as expressed in the agreements, not rewrite the same. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

The "merger doctrine," in contract cases, refers to the absorption of one contract into another subsequent contract. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, pet. denied). When parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent. *Midwest Med. Supply Co., L.L.C. v. Wingert*, 317 S.W.3d 530, 537–38 (Tex. App.—Dallas 2010, no pet.). Merger is largely a matter of intention of the parties. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 529 (Tex. App.—San Antonio 1996, no writ).

Thus, whether merger occurs, or whether an agreement is simply supplemental and does not contradict the earlier written contract, is determined from the parties' intent. *Fish*, 948 S.W.2d at 898. Before one contract can merge into another, the last contract must be between the same parties as the first, must embrace the same subject matter, and must have been so intended by the parties. *Id.* at 898–99; *Smith v. Smith*, 794 S.W.2d 823, 828 (Tex. App.—Dallas 1990, no writ.). Thus, if any of these elements fail, a claim of merger fails. *See Fish*, 948 S.W.2d at 899 (holding no merger where parties were different in subsequent transaction).

**Discussion**

Murphy Land argues that the when the parties executed the Roadway Lease, the pipeline easements merged into the lease, and that the easements ceased to exist as independent property rights. Specifically, Murphy Land contends that (1) the easement and lease transactions cover the same subject matter, (2) the parties would not have executed the Roadway Lease when Atmos Energy already had a right of ingress and egress under the pipeline easements, (3) oil and gas companies do not execute documents granting rights already possessed by the company, and (4) at a minimum, there is a fact issue as to the intent of the parties due to the nature of an inquiry into intent. Once the Roadway Lease expired due to passage of time under its own terms, its argument continues, Atmos Energy had no right to access the land. We disagree.

4

The pipeline easements and the Roadway Lease are separate transactions covering different subject matter. For example, when express easements such as the pipeline easements here provide access in general terms without specifying the exact location, the right to select the location usually belongs to the grantor, unless the grantor fails to exercise the right and the grantee selects a reasonable location with the consent or acquiescence of the grantor. *See Vinson v. Brown*, 80 S.W.3d 221, 228 (Tex. App.—Austin 2002, no pet.). The easements did not specify the location for ingress and egress, and those access points have become fixed and certain once established decades ago. *See Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 666 (Tex. 1964); *see also Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 428 (Tex. App.—Austin 1998, no pet.). The purpose of the pipeline easements is to construct, operate, and maintain gas pipelines, with the incidental right to access the property to further that purpose. The Roadway Lease, on the other hand, gave Atmos Energy the distinct right to construct a new road of specific width wherever it desired on the property that it could use for any purpose without limitation during a specified time period. This is a right distinct from the permanent place of ingress and egress already existing on the property under the pipeline easements, which allows access only to further the purpose of the easements—pipeline construction, operation, inspection, repair, maintenance, and replacement.

Murphy Land also contends that merger is largely a question of intent, and whether the parties intended to merge the pipeline easements into the Roadway Lease necessarily raises a fact issue. We disagree. Because the easements and roadway lease are separate transactions having different purposes and subject matter, and are not inconsistent with one another, the merger doctrine fails as a matter of law. *See Fish*, 948 S.W.2d at 898–899; *Smith*, 794 S.W.2d at 828; *see also Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, No. 17-0266, 2019 WL 983789, at *8 (Tex. Mar. 1, 2019) (not yet released for publication) (holding merger doctrine inapplicable and noting that "[w]hether the parties intended the relatively brief assignment agreements to render the JOA—and its scores of highly detailed provisions—a nullity is questionable"). There is no evidence that Atmos Energy intended to extinguish its long-held rights under the pipeline easements by its execution of a temporary road lease.

Finally, Murphy Land argues that, under the doctrine of estoppel by contract, Atmos Energy's execution of the Roadway Lease prohibits it from asserting that it has a right to access the land at issue. Estoppel by contract is a form of quasi-estoppel based on the idea that a party to a contract will not be permitted to take a position inconsistent with the contract to the prejudice of

5

another.  *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721–22 (Tex. App.–Dallas 2004, no pet.).  Estoppel by contract binds a party to the terms of his contract unless the contract is void, annulled, or set aside in some way.  *See Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 387-88 (Tex. App.—Houston [14th Dist.] 2015, no pet.).  On appeal, Murphy Land does not explain how this doctrine applies in this case. As we have described above, the pipeline easements and the Roadway Lease function independent of one another, do not reference each other, and do not indicate any intent to relate to one another.  In sum, they are not inconsistent with one another, and the "estoppel by contract" doctrine does not apply here as a matter of law.  Murphy Land's first issue is overruled.

### SUMMARY JUDGMENT - GAS FLARE PIGGING OPERATION

In its second issue, Murphy Land contends that there is a genuine issue of material fact concerning whether Atmos Energy may conduct a temporary "gas flare smart pigging operation" under the rights granted to it in the pipeline easements.

### Applicable Law

An easement is a non-possessory interest that authorizes its holder to use property for a particular purpose.  *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).  An easement holder who exceeds the rights granted by the owner of the servient estate commits a trespass.  *Id.* at 703.  We interpret easements according to basic principles of contract construction and interpretation.  *Id.*  Courts construe contracts as a matter of law, and we review the trial court's ruling de novo.  *See Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983).

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself."  *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015); *Marcus Cable*, 90 S.W.3d at 700–01 (applying contract construction principles to express easement).  If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.  *Kachina Pipeline Co.,* 471 S.W.3d at 450.  A contract is not ambiguous simply because the parties disagree over its meaning.  *Id.*

The construction of an unambiguous contract, including the determination of whether it is unambiguous, depends on the language of the contract itself, construed in light of the surrounding circumstances.  *First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017).  We may consider the facts and circumstances surrounding a contract, including the commercial setting in which the

6

contract was negotiated. ***Kachina Pipeline Co.***, 471 S.W.3d at 450. However, while evidence of circumstances can be used to inform the contract text and render it capable of only one meaning, extrinsic evidence can be considered only to interpret an ambiguous writing, not to create ambiguity. ***Id.***

Courts may also consider the surrounding circumstances in determining the parties' intent as expressed in the agreement, but the court must determine the parties' expressed intent. ***First Bank***, 519 S.W.3d at 110; ***Marcus Cable***, 90 S.W.3d at 700–01. Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated. ***First Bank***, 519 S.W.3d at 110. We do not look to such surrounding circumstances to add to, alter, or contradict the terms to which the parties have agreed, but to inform our understanding of the unambiguous terms actually contained within the contract itself. ***Id.*** Simply stated, courts may not rely on evidence of surrounding circumstances to make the language say what it unambiguously does not say. ***Id.***

When terms are not defined in the instrument granting the easement, we give them their plain, ordinary, and generally accepted meaning. ***Marcus Cable***, 90 S.W.3d at 701. When interpreting the granting language of an easement, we resolve doubts about the parties' intent against the grantor, or servient estate, and adopt the interpretation that is the least onerous to the grantee, or dominant estate, in order to confer on the grantee the greatest estate permissible under the instrument. *See **Dwyer***, 374 S.W.2d at 665; ***CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd.***, 264 S.W.3d 381, 388–89 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

No rights pass to the easement holder by implication except those that are "reasonably necessary" to enjoy the rights that the easement grants expressly. ***Marcus Cable***, 90 S.W.3d at 701. Accordingly, if the grant expressed in the easement cannot be construed to apply to a particular purpose, a use for that purpose is not allowed. *See **id.*** Yet, ***Marcus Cable*** acknowledged that the common law permits some flexibility in determining an easement holder's rights because the manner, frequency, and intensity of use of an easement may change over time to accommodate technological development. ***Id.***, 90 S.W.3d at 701. Technological advances must, however, fall within the purposes for which the easement was created, as determined by the grant's terms. *See **id.*** Accordingly, an express easement encompasses only those technological developments for which the easement was granted. ***Id.*** at 702.

7

**Discussion**

It is undisputed that a pipeline "maintenance pig" is a device inserted into a pipeline to clean the pipe of debris that builds up over time and obstructs or impedes the flow of gas, such as water or other liquids, rust or corrosion, and solids or precipitates such as sand or salt deposits. A "smart pig" is inserted into the pipeline, as part of the company's maintenance procedure, to measure and record irregularities and defects in the pipe such as corrosion, cracks, or other similar irregularities that may require monitoring or repair. A gas flare is used to move the smart pig through the pipeline at the required speed to record the necessary data.

Murphy Land argues that the temporary smart pig gas flaring procedure is not within the scope of Atmos Energy's rights under the easements, that such a procedure generally requires a separate surface lease, and that even if a general maintenance pigging operation is authorized, the smart pig gas flaring component is not reasonably necessary to conduct it, and Atmos Energy need not insert or remove the pig on Murphy Land's property.[2]

In pertinent part, the pipeline easements authorize Atmos Energy "to construct, maintain, and operate pipe lines and appurtenances thereto," along with "ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining, and replacing the property of [Atmos Energy] . . . ." These terms are not defined in the easements, and we give them their plain and ordinary meaning. *Marcus Cable*, 90 S.W.3d at 701. The plain, ordinary, and generally accepted definition of the relevant term, "maintain," is as follows: "To keep up, preserve, bear the cost of, keep unimpaired, keep in good order, repair;" and "[t]o hold or keep in any particular state or condition especially in a state of efficiency or validity; to support, sustain or uphold; to keep up; not to suffer, to fail, or decline." *See Big Three Welding Equip. Co. v. Crutcher, Rolfs, Cummings, Inc.*, 229 S.W.2d 600, 603 (Tex. 1950) (compiling dictionary definitions and defining "maintain" under its ordinary and plain meaning in oil and gas pipeline context). We interpret the express easements' unambiguous language to provide the greatest interest possible to the dominant estate—here Atmos Energy's right to maintain its pipelines—and construe it against the servient estate—here Murphy Land's property burdened by the pipeline easements. *See Dwyer*, 374 S.W.2d at 665; *CenterPoint Energy*, 264 S.W.3d at 388–89.

---

[2] Murphy Land also argues that the easements merged with the Roadway Lease, which prevents Atmos Energy's access to the land for any purpose, including any pigging procedure. Because we have concluded that the merger doctrine does not apply here, this argument is without merit.

Considering these standards, the easements here can be given a definite, certain, and unambiguous legal meaning, based on the plain and ordinary meaning of the undefined term "maintain" used within them. The plain and ordinary meaning of "maintain," as applied to the procedures here, includes within its scope the "maintenance pig" and "smart pig gas flaring" procedures, which both keep the pipelines unimpaired, in good order, in a state of efficiency, and prevent the pipelines' failure or decline. *See Big Three Welding Equip.*, 229 S.W.2d at 603. Moreover, the common law recognizes that the manner, frequency, and intensity of activity on the easements may change over time to accommodate technological development, so long as the development falls within the express purposes of the easements. *See Marcus Cable*, 90 S.W.3d at 701. The "smart pig gas flaring" procedure, which Atmos Energy uses to detect defects, deformities, and other issues within the pipelines, is such a technological development that falls within Atmos Energy's authority to "maintain" the pipelines under the easements. *See id.*; *see also CenterPoint Energy*, 264 S.W.3d at 388–89 (applying *Marcus Cable* and concluding as a matter of law that easement language encompassed technological innovation and easement use for cellular transmission lines and equipment); *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (upholding summary judgment that easement permitting company to lay, operate, and maintain gas pipeline upon, over, under, and through property encompassed construction and relocation of above ground block valve assembly, because these rights "are naturally encompassed by the plain language of the granting clause as rights necessary to the enjoyment of the easement").

Murphy Land points to its expert's affidavit, wherein he concludes that a surface lease is generally required to conduct a pigging operation, the gas flaring component is not reasonably necessary to conduct a pigging operation, and Atmos Energy need not insert or remove the pig on Murphy Land's property. He points generally to federal and state statutes and regulations that do not appear to support his contentions. He also cites generally to technical treatises on pigging and pipeline management, but without pinpoint citation or discussion as to how those authorities apply here. In any event, Murphy Land essentially requests that we examine this extrinsic evidence to contradict or alter the unambiguous language in the express pipeline easements. We decline to do so. *See First Bank*, 519 S.W.3d 95, 109–10; *Kachina Pipeline*, 471 S.W.3d at 450; *Marcus Cable*, 90 S.W.3d at 700–02. As we have held, the easements are unambiguous, and the maintenance pig and smart pig gas flaring procedures clearly fall within the plain and ordinary

9

meaning of "maintain" as used within the easements.  *See **Marcus Cable***, 90 S.W.3d at 701; ***Big Three Welding Equip.***, 229 S.W.2d at 603.  Accordingly, the trial court properly granted Atmos Energy's motion for summary judgment.[3]  Murphy Land's second issue is overruled.

## DISPOSITION

Having overruled Murphy Land's two issues, we ***affirm*** the trial court's order granting summary judgment in favor of Atmos Energy.

<u>**GREG NEELEY**</u>
Justice

Opinion delivered April 17, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[3] The parties also briefed issues regarding the sufficiency of the summary judgment evidence, such as the affidavits of the parties' experts.  However, we have held that the easements are unambiguous, can be given a certain meaning as a matter of law, and that the gas flaring pigging procedure constitutes "maintenance" under the easements' unambiguous express terms.  This extrinsic evidence, to the extent it is disputed, would only serve to alter the unambiguous language in the easements.  Therefore, we need not address these issues.  *See* TEX. R. APP. P. 47.1.

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 17, 2019

NO. 12-18-00138-CV

**MURPHY LAND GROUP, LLC,**
Appellant
V.
**ATMOS ENERGY CORPORATION,**
Appellee

Appeal from the 3rd District Court

of Houston County, Texas (Tr.Ct.No. 16-0099)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below granting summary judgment in favor of **ATMOS ENERGY CORPORATION be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **MURPHY LAND GROUP, LLC,** for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*