**Reversed and Rendered in part; and Affirmed in part; and Opinion Filed December 22, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-19-00343-CV

**COMMERCE STREET CAPITAL, LLC, Appellant/Cross-Appellee**

**V.**

**DURANT BANCORP, INC., NAB ACQUISITION CORP., FIRST UNITED BANK & TRUST COMPANY, NORTH AMERICAN BANCSHARES, INC. AND AMERICAN BANK OF TEXAS, Appellees/Cross-Appellants**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-14703**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Whitehill

This contract breach case arises from the sale of a bank and the nonpayment of a broker fee. Appellant/cross-appellee Commerce Street Capital, LLC (Broker) was the plaintiff in the trial court. Appellees/cross-appellants (the Banks) were the defendants.

The jury's findings generally favored Broker. Broker's attorneys' fees were tried separately to the bench. The final judgment awarded Broker $5.6 million in

damages, plus attorneys' fees and interest. Broker appealed, and the Banks cross-appealed.

The pivotal issues and holdings are that:

• The evidence was legally and factually sufficient to support the jury's finding that appellee North American Bancshares, Inc. (NAB) breached its contract with Broker, based on evidence that Broker first identified NAB's ultimate purchaser during the contract's initial term, which means Broker was entitled to its fee. That result applies under the contract's terms, although NAB already knew the buyer.

• The evidence was legally insufficient to support the jury's finding that Broker suffered $1 million in "loss of credit and reputation" damages because (i) the jury charge required proof of lost credit reputation damages and (ii) Broker adduced no evidence of the kind of injury legally necessary to support such damages.

• We reject both sides' attorneys' fees challenges because (i) Broker did not establish a presumption of reasonableness for a higher fee by conclusive or overwhelming evidence and (ii) Texas Civil Practice and Remedies Code Chapter 38's judicial notice provision defeat the Banks' challenges.

Accordingly, we reverse the judgment's loss of credit and reputation award, modify the prejudgment interest award, and otherwise affirm.

# I. BACKGROUND

## A. Facts

We draw the following facts from the trial evidence viewed in the light most favorable to the jury's findings:

### 1. The Parties

Appellant Broker is an investment banking firm that, among other things, helps people buy and sell banks.

Appellee NAB was a Texas corporation that wholly owned appellee American Bank of Texas. Lacy Harber owned 100% of NAB, which he decided to sell. In June 2014, NAB retained Broker to achieve that goal.

Appellee Durant Bancorp, Inc. is an Oklahoma corporation that wholly owns appellee First United Bank & Trust Company. Greg Massey is First United Bank's president and CEO.

Massey's father and Harber are long-time friends, and Durant and NAB had a business relationship going back to the 1990s. Durant had an ongoing interest in buying or merging with NAB going back to the 1990s as well. Additionally, Massey met Broker's managing director C.K. Lee in about 2013 and told Lee that Durant would like to acquire NAB if it were ever for sale.

The fifth and final appellee is NAB Acquisition Corp., a Durant subsidiary involved in Durant's eventual acquisition of NAB.

## 2. The NAB–Broker Agreement

NAB and Broker signed their engagement letter agreement (Agreement) on June 11, 2014.

The Agreement had a twelve month initial term with two automatic six month extensions absent a written termination. If a sale closed within the initial term, Broker was entitled to a "Success Fee" calculated according to a formula based on the sale consideration. No sale closed within the Agreement's two year initial term.

The Agreement also had a "tail" provision that is at the heart of this litigation:

Expiration Condition
Should this Engagement expire prior to the closing of a Transaction between [NAB] and *an Acquirer identified and contacted by [Broker] during the term of this Engagement*, [Broker] will be entitled to its full Success Fee, as described above, in the event that at any time prior to the expiration of twenty-four (24) months after the termination of this Engagement, the Transaction is consummated.

(Emphasis added.)

## 3. NAB's Marketing and Sale

After Broker and NAB signed the Agreement on June 11, 2014, several Broker employees worked on the NAB project, including Gross, Lee, and Brian Johnson.

On June 19, 2014, Broker and NAB personnel met to discuss the sale's mechanics and educate Broker personnel about NAB's history. Broker personnel "identified Durant Bancorp" at that meeting as a potential acquirer, but an NAB representative indicated that NAB did not want to include Durant in the process.

Nevertheless, Durant learned that NAB was on the market, and on June 24, 2014, Massey and others met with NAB director Joe Rushing and presented an offer to buy NAB for $351 million. Rushing forwarded the offer to Lee. NAB rejected the offer.

In August 2014, Durant submitted a second offer for $405 million. A second potential buyer offered $420 million. NAB didn't accept either offer.

Nine months later, a third potential buyer offered $450 million for NAB. Although Harber accepted the offer, the deal didn't close, and Harber took NAB off the market soon thereafter.

For purposes of this appeal, the Banks concede that the Agreement's initial term lasted the two year maximum, expiring on June 11, 2016.

In May 2016, Durant and NAB agreed to Durant buying NAB for $450 million. They signed an agreement in June 2016, and the sale closed in November 2016.

Broker didn't negotiate the deal but learned about it before it closed. Broker demanded its fee under the Agreement, but the Banks didn't pay.

## B.   Procedural History

In November 2016, Broker sued NAB and American Bank of Texas for contract breach. It later added the other Banks as defendants and added a quantum meruit claim.

The case was tried to a jury, which found that NAB breached the Agreement and the breach was not excused. The jury found that Broker's damages were $4.6 million as the fee it was due under the Agreement and $1 million in "loss of credit and reputation" damages.

Broker's attorneys' fees were tried to the bench.

The trial judge signed a judgment. Broker appealed, and appellees cross-appealed. We questioned the judgment's finality because it awarded "up to $75,000.00 for any appeal to the Dallas Court of Appeals," abated the appeal, and remanded the case for rendition of a final judgment. The trial judge then signed a final judgment that awarded Broker the damages that the jury found plus specific amounts of trial and appellate attorneys' fees.

## II. ISSUES

Broker raises three issues complaining that the attorneys' fees awards are too low.

The Banks raise three cross-appeal issues. First, they argue that the evidence was legally or factually insufficient to support the jury's contract breach finding. Second, they argue that Broker was not entitled to any recovery for loss of credit and reputation. Third, they challenge the attorneys' fees awards.

## III.  ANALYSIS

**A.    Cross-Appeal Issue One:  Is the evidence legally or factually insufficient to support the jury's contract breach finding?**

No.  The evidence is legally and factually sufficient to support the challenged finding because there is testimony that at an early meeting Broker identified Durant as a prospective buyer and communicated that fact to NAB.[1]

### 1.    Standard of Review

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must show that no evidence supports the finding.  *Guillory v. Dietrich*, 598 S.W.3d 284, 293 (Tex. App.—Dallas 2020, pet. denied).

When evidence is so weak that it does no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and, in legal effect, is no evidence.  *Id*.  On the other hand, evidence is legally sufficient if it is sufficient to enable reasonable and fair-minded people to reach the verdict under review.  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In conducting our no evidence review, we view the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it.  *Id*. at 822.  We must credit evidence favorable to the verdict if a reasonable person

---

[1] The Banks preserved this issue via their JNOV motion and their new trial motion.

could, and we must disregard contrary evidence unless a reasonable person could not. *Id*. at 827.

A party challenging the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof must demonstrate that the evidence supporting the jury finding is so weak or the finding is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.). The jury is the sole judge of witness credibility and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## 2. Applicable Law

When we interpret a contract, our prime directive is to ascertain the parties' intent as expressed in the instrument. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018). "We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594–95 (Tex. App.—Dallas 2015, pet. denied).

"The interpretation of an unambiguous contract is a question of law for the court." *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 122 (Tex. 2018).

A contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home*

*Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied). Whether a contract is ambiguous is a question of law for the court to resolve by reviewing the contract as whole in light of the circumstances existing at the time it was made. *Id.*

We may conclude a contract is ambiguous even if no party pleads ambiguity. *Id.*

If the contract is ambiguous, the parties' intent is a question of fact for the jury. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (per curiam).

"A breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform." *Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.).

When a dispute exists concerning a party's failure to perform, the disputed fact questions are submitted to the jury. *Orix Capital Mkts., L.L.C. v. Wash. Mut. Bank*, 260 S.W.3d 620, 623 (Tex. App.—Dallas 2008, no pet.).

### 3. Sufficient evidence supports the jury's breach finding.

The parties focus on the Agreement's Expiration Condition in arguing about the sufficiency of the contract breach evidence, and they especially focus on the meaning of the term "identified" in the phrase "an Acquirer identified and contacted by [Broker] during the term of this Engagement." They agree that the Banks' non-payment of Broker's fee breached the Agreement if Broker "identified" Durant as

an acquirer during the Agreement's initial term (June 11, 2014 – June 11, 2016, for purposes of this appeal).[2]

The Banks' argument runs like this:

- "Identify" means to recognize or establish someone or something as being a particular person or thing.

- Thus, under the Agreement, only one party (Broker or NAB) could "identify" any particular potential acquirer because the other party would not "identify" the potential acquirer by simply repeating its name.

- And the evidence established that Broker knew NAB had "identified" Durant as a potential acquirer before the Agreement was executed.

Broker responds that (i) it could "identify" Durant within the Agreement's meaning even if NAB identified Durant first and (ii) in any event, the evidence supported a finding that Broker identified Durant first.

We reject the Banks' argument and generally agree with Broker's second argument. The common meanings of "identify," which are consistent with the term's context in the Agreement, are (i) to establish or indicate who or what someone or something is and (ii) to recognize. *See, e.g., Identify*, THE NEW OXFORD AMERICAN DICTIONARY (2001). Even if we construe the Agreement to mean that Broker did not "identify" a potential acquirer if NAB identified it first, Brian

---

[2] Both sides seem to assume that the phrase "by [Broker]" modifies both "identified" and "contacted," and we assume without deciding the same. We note, however, that the phrase might be read to modify only "contacted." *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580–81 (Tex. 2000) (discussing the doctrine of last antecedent); Jery Payne, *Gluing Qualifiers with a Knife: Another Look at Why a List Might Backfire*, 19 SCRIBES J. OF LEGAL WRITING 143, 145 (2020) ("The statute was ambiguous because it contained a qualifier after a list.").

Johnson testified that Broker identified Durant first by recognizing it as a potential acquirer and indicating that status to NAB at a June 19, 2014 meeting. (Gross testified similarly about a meeting involving him, Rushing, Lee, and Johnson, but he placed that meeting in approximately May 2014.) We see no evidence that NAB identified Durant to Broker before June 24, 2014, when NAB forwarded Durant's offer to Broker, much less evidence that the jury was compelled to accept over Broker's evidence.

Nonetheless, the Banks argue that the evidence shows that Broker determined at or around the time of the June 19, 2014 meeting that Durant was *not* a potential acquirer. We disagree. Johnson testified that NAB—not Broker—rejected Durant's inclusion "in the process" as a potential acquirer. Moreover, there was also evidence that within about three weeks after the June 19 meeting NAB told Broker to work with Durant as a potential acquirer "as a courtesy." The jury could have found, from this evidence, that Broker "identified" Durant as a potential acquirer within the meaning of the Agreement's Expiration Condition, and thus that Broker was entitled to its full Success Fee.

The Banks also urge that the evidence conclusively showed that NAB "recognized" Durant was a potential acquirer long before the Agreement was made. We agree that there was evidence that Durant had an open interest in acquiring NAB dating back to the 1990s. But the jury could reasonably conclude that NAB's knowledge of Durant's interest in acquiring NAB doesn't mean NAB "identified"

–11–

Durant—i.e., recognized Durant as an actual potential acquirer or indicated that recognition to Broker.

### 4.     Conclusion

The evidence is legally and factually sufficient to support the jury's finding that NAB breached the Agreement, and we overrule cross-appeal issue one.

**B.     Cross-Appeal Issue Two:  Is the $1 million loss of credit and reputation award erroneous, either as a matter of law or as a matter of evidentiary sufficiency?[3]**

Yes, among the reasons, because the charge required the jury to find loss to credit reputation, and there is no evidence that NAB's breach injured Broker's credit reputation as Texas law defines that term.

The jury answered $1 million in response to this part of Question 3:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Broker] for its damages, if any, that resulted from NAB's failure to comply?

. . . .

For loss of credit and reputation:

Damage to credit reputation that was a natural, probable, and foreseeable consequence of NAB's failure to comply?

Answer:     $1,000,000

We agree with the Banks' argument that the evidence supporting this award is legally insufficient.  Although the jury charge labeled this damages element "loss of credit and reputation," it went on to define the element as "Damage to credit

---

[3] The Banks preserved error by objecting to the question on no evidence grounds and by JNOV motion.

reputation that was a natural, probable, and foreseeable consequence of NAB's failure to comply" with the Agreement. "To recover actual damages for loss of credit reputation, a plaintiff must show that a loan was actually denied or a higher interest rate was charged." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 872 (Tex. App.—Dallas 2008, no pet.). Broker put on no evidence that it was denied a loan or charged a higher interest rate, much less that NAB's contract breach caused such an occurrence. Accordingly, there is no evidence to support the damages finding or judgment award.

Still, Broker argues that the finding was supported by testimony that NAB's contract breach harmed Broker's reputation in the business community. Broker's president and CEO Dory Wiley testified that Broker could have lost "numerous deals" and "heck, if we lost one deal that was half the size [it] is $2 million. That's how I came up with the number when you asked it. Which I think is pretty conservative." But this kind of evidence doesn't address the *EMC Mortgage* requirement of either a loan denial or a higher interest rate's being charged.

Broker also invokes the principle that absent a charge objection we measure the sufficiency of the evidence against the jury charge as given. *See, e.g.*, *id*. at 869. But we are applying that principle. The jury charge defined recoverable "loss of credit and reputation" damages as "*Damage to credit reputation* that was a natural, probable, and foreseeable consequence of NAB's failure to comply." (Emphasis added.) And our *EMC Mortgage* decision is binding authority regarding the kind of

evidence necessary to support an award of injury to credit reputation damages. *See*

*Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415 (Tex. App.—Dallas 2019, no pet.)

(en banc) ("Once a panel of this Court has spoken, subsequent panels are powerless

to contradict that decision, barring reconsideration by the Court sitting en banc or an

intervening decision by the supreme court.").

Finally, even assuming Broker could recover general harm to reputation

damages based on the jury charge as given, its evidence still amounted to mere

speculation that NAB's conduct had caused Broker any actual harm. Broker cites a

Texas Supreme Court defamation case for the premises that (i) lost reputation

evidence should be more than theoretical, (ii) evidence that the community was

aware of and discussed the defamatory statements is insufficient, and (iii) there must

be evidence that people believed the statement and the plaintiff's reputation was

actually affected. *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017). Broker

adduced evidence that (i) people in the business community wondered why Broker

didn't close an NAB transaction and (ii) certain banks did not hire Broker thereafter,

but it adduced no evidence beyond speculation that it actually lost any business

because of NAB's conduct. *See id.* ("Losing a job or business opportunities, of

course, is not evidence of loss of reputation unless the evidence connects it to the

defamation.").[4]

---

[4] The Banks also argue that loss of reputation damages simply aren't recoverable in a contract breach case. In light of our other holdings, we need not and do not address this argument.

–14–

We sustain the Banks' second cross-appeal issue.

## C. Cross-Appeal Issue Three and Broker's Issues: Are the attorneys' fees awards to Broker reversibly erroneous?

No. After considering the parties' numerous arguments, we reject them all.

### 1. The Evidence, Judgment, and Appellate Arguments

The trial court held a bench trial on Broker's attorneys' fees at which Broker's lead attorney was the sole witness. Broker also introduced redacted invoices into evidence.

The corrected final judgment awarded Broker the following amounts as attorneys' fees:

- $473,088 "for all matters to date";

- $10,000 "for responding to any motion for new trial filed by Defendants";

- "If there is an appeal to the Dallas Court of Appeals, [Broker] shall be awarded $75,000 in fees if [Broker] prevails"[5]; and

- "If there is an appeal to the Texas Supreme Court, [Broker] shall be awarded $50,000 in fees if [Broker] prevails."

Broker argues in three issues that (i) the evidence was legally sufficient to support a $538,260 award of trial level attorneys' fees instead of the $473,088 that the trial court awarded, (ii) the evidence was factually sufficient to support a $538,260 award of trial level attorneys' fees instead of the $473,088 that the trial

---

[5] The original "final judgment" awarded Broker "up to $75,000 for any appeal to the Dallas Court of Appeals," which led to our remand and the subsequent corrected final judgment. The original judgment also omitted conditional language from this award, but the corrected judgment contains such language.

court awarded, and (iii) the trial court erred by capping Broker's intermediate appellate attorneys' fees at $75,000.

The Banks argue in one cross-appeal issue that (i) we should reverse the fee awards if we reverse the judgment's substance and (ii) the evidence was insufficient to support the amounts awarded. Its second argument includes a subsidiary argument that the trial court erred by excluding certain evidence relevant to Broker's recoverable attorneys' fees.

### 2. Standard of Review

The evidentiary sufficiency review standard is the same for findings after jury and bench trials. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We have already stated the appellate review standard applicable to the Banks' evidentiary sufficiency challenges.

Because Broker bore the burden of proof on fees, we apply a different appellate review standard to its sufficiency challenges. For its legal sufficiency challenge, it must show that the evidence established as a matter of law all vital facts supporting the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). For its factual sufficiency challenge, it must show that the adverse finding is against the great weight and preponderance of the evidence. *Id*. at 242.

We review a decision to admit or exclude evidence for abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam).

### 3. The $473,088 Award for Trial Fees

We begin with Broker's claim that the $473,088 award for past trial level attorneys' fees was too low and the Banks' contention that it was too high.

#### a. Applicable Law

Generally, a claimant seeking its attorneys' fees must prove with sufficient evidence its attorneys' reasonable hours worked and reasonable rates. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019). Sufficient evidence includes at a minimum evidence of (i) the particular services performed, (ii) who performed those services, (iii) approximately when the services were performed, (iv) the reasonable amount of time required to perform the services, and (v) the reasonable hourly rate for each person performing the services. *Id*. at 502. When supported by sufficient evidence, this lodestar calculation creates a presumption of the reasonable and necessary attorneys' fees that can be shifted to the other side. *Id*. at 499.

Texas Civil Practice and Remedies Code Chapter 38 also supplies some rules applicable to this case. Under Chapter 38, a party can recover its attorneys' fees in addition to the amount of a valid claim for written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8). Moreover, (i) it is presumed that the usual and customary fees for such a claim are reasonable, (ii) the presumption may be rebutted, and (iii) the court may take judicial notice of the usual and customary fees and of the case file's

contents without receiving further evidence in a jury case if the amount of attorneys' fees is submitted to the court by agreement. *Id*. §§ 38.003–.004.

### b. Broker's Argument

Broker's first two issues argue that it introduced conclusive or overwhelming evidence that its trial level fees were $538,260 rather than the $473,088 that the trial court awarded. Its legal and factual sufficiency arguments are the same: under *Rohrmoos*, Broker proved that $538,260 was its presumptively reasonable fee, and the Banks introduced no evidence to rebut the presumption. Therefore, Broker concludes, the trial court could not reasonably award less.

We disagree with Broker's argument. The *Rohrmoos* presumption applies only if the party seeking fees provides sufficient evidence of the *reasonable* hours worked and the *reasonable* hourly rate of those who did the work. 578 S.W.3d at 498–99. Here, we conclude that the trial court could have reasonably determined that Broker didn't prove the reasonable hourly rates of two attorneys who worked on the case.

This issue principally turns on the work done by attorneys David Ritter and Chelsea Spencer. Evidence showed that Ritter's rate was $425, Spencer's rate was $375, and they billed a total of $63,172.50 in allegedly recoverable fees. But Broker's evidence that their rates were reasonable was negligible. Broker introduced no evidence of their experience or special expertise, if any, or any direct evidence that their rates were reasonable under the circumstances. At most, Broker's attorney

–18–

testified generally that reasonable rates in commercial litigation range from $275 for associates to anywhere from $300 to $600 for partners. The trial court, as the fact finder, reasonably could have concluded that Broker didn't introduce sufficient evidence about the reasonableness of these attorneys' hourly rates (or work) to justify the presumption or awarding their fees.[6]

Subtracting Ritter's and Spencer's billed time from Broker's claimed $538,260 leaves $475,087.50, but the trial court awarded only $473,088. This further $2,000 difference could have any number of explanations. The Banks argued below that Broker's billing records were too vague to be meaningful and that Broker didn't adequately segregate out all fees solely attributable to the Banks' counterclaims. We conclude that the trial court reasonably could have accepted one of these reasons as a sufficient basis to reduce Broker's claimed fee by another $2,000.

We overrule Broker's first two issues.

### c.     The Banks' Arguments

The Banks make several arguments attacking the trial level attorneys' fees award: (i) Broker's billing records were too heavily redacted to permit meaningful review, (ii) Broker introduced no evidence that the services reflected in the billing

---

[6] Although the trial judge made no findings of fact about attorneys' fees, the judge said on the record that he intended not to award Broker any fees for Ritter and Spencer because there wasn't enough evidence that their rates were reasonable.

records were reasonable and necessary, (iii) the judgment awarded $10,000 in fees for responding to the Banks' new trial motion, but Broker didn't file any response to that motion,[7] (iv) Broker didn't adequately segregate out nonrecoverable fees incurred solely to defend against the Banks' counterclaims, and (v) the trial court erroneously excluded a letter sent by Broker's attorney purportedly indicating that half of Brokers' attorneys' fees were incurred solely to defend the Banks' counterclaims.

We reject the Bank's arguments because under Chapter 38 the trial court was entitled to base its award on judicial notice of usual and customary fees for the case. *See* TEX. CIV. PRAC. & REM. CODE §§ 38.003–.004.  We will presume the trial court took such judicial notice in determining the fee awarded, even absent other evidence supporting the award.  *Logan v. Randall*, No. 05-19-00043-CV, 2020 WL 948381, at *8 (Tex. App.—Dallas Feb. 27, 2020, pet. denied) (mem. op.).  The Banks have not shown that the trial court erred in exercising its discretion to take judicial notice of the usual and customary fees in this case.  *See id*. at *8–9 (relying on the Chapter 38 presumption in rejecting sufficiency challenge of fee award).

We reject the Banks' arguments regarding the trial level attorneys' fees award.

---

[7] A supplemental clerk's record indicates that this argument is factually wrong.

### 4. The Appellate Fee Awards

Broker's third issue complains that the trial court erred by awarding it only $75,000 in intermediate appellate attorneys' fees because its attorney testified that those fees could range from $75,000 to $150,000. Broker argues that we should remand so it can present evidence of its actual appellate fees. On the other hand, the Banks argue that Broker's appellate fees evidence is insufficient.

We reject both sides' arguments. The trial judge's ability to take judicial notice of usual and customary fees under Chapter 38 and the presumption that such fees are reasonable extend to appellate fees. *See, e.g.*, *Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (per curiam) ("The trial court's own proceedings together with the fact that it may take judicial notice of usual and customary fees constitute some evidence to support the award of appellate attorney's fees."). We conclude the presumption supplies sufficient evidence to support the awards of appellate attorney's fees in this case. *See id.* We are not remanding this case for further proceedings, so we reject Broker's request to re-try appellate attorneys' fees. *See id.*

### 5. Conclusion

We overrule Broker's third issue and the Banks' third cross-appeal issue.

## IV. DISPOSITION

For the foregoing reasons, we reverse the trial court's corrected final judgment in part and affirm it in part.

–21–

We reverse decretal section paragraph two, which says, "Plaintiff shall have and recover from Defendants compensatory damages in the amount of $1,000,000.00," and render judgment that Broker take nothing for "compensatory damages."

We affirm the remainder of the judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

190343F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

COMMERCE STREET CAPITAL,
LLC, Appellant/Cross-Appellee

No. 05-19-00343-CV     V.

DURANT BANCORP, INC., NAB
ACQUISITION CORP., FIRST
UNITED BANK & TRUST
COMPANY, NORTH AMERICAN
BANCSHARES, INC. and
AMERICAN BANK OF TEXAS,
Appellees/Cross-Appellants

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-16-14703.
Opinion delivered by Justice
Whitehill. Justices Pedersen, III and
Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** paragraph 2 of the trial court's judgment's decretal section, which says, "Plaintiff shall have and recover from Defendants compensatory damages in the amount of $1,000,000.00," and **RENDER** judgment that appellant/cross-appellee Commerce Street Capital, LLC take nothing for compensatory damages.

We **AFFIRM** the trial court's judgment in all other respects.

We **ORDER** that each party bear its own costs of this appeal.

We further **ORDER** that appellant/cross-appellee Commerce Street Capital, LLC recover the judgment from Lacy Harber and Dorothy Harber as sureties on

appellee/cross-appellant Durant Bancorp, Inc.'s supersedeas bond. After the judgment and all costs of appellee/cross-appellant Durant Bancorp, Inc. have been paid, the obligations of Lacy Harber and Dorothy Harber as sureties on appellee/cross-appellant Durant Bancorp, Inc.'s supersedeas bond are **DISCHARGED**.


Judgment entered December 22, 2020.